1997 SD 6

STATE of South Dakota, Petitioner
and Appellant,

v.

Thomas J. GESINGER, Defendant
and Appellee.

No. 19620.

Supreme Court of South Dakota.

Considered on Briefs Dec. 5, 1996.

Decided Jan. 22, 1997.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for petitioner and appellant.

Jeffrey T. Sveen of Siegel, Barnett & Schutz, Aberdeen, for defendant and appellee.

GILBERTSON, Justice.

[¶ 1.] State of South Dakota petitioned for an intermediate appeal from a trial court's order suppressing certain statements made by Thomas Gesinger (Gesinger) both prior to and after his arrest for driving while under the influence of alcohol (DUI). We granted the State's petition, and following review of the substantive issues raised, we reverse.

FACTS AND PROCEDURE

[¶ 2.] On November 15, 1994, at 10:45 p.m., a South Dakota Highway Patrolman Mark Nelson (Trooper Nelson) stopped a vehicle driven by Gesinger on U.S. Highway 212 in Potter County for speeding. Trooper Nelson's radar clocked Gesinger traveling 73 miles per hour in a 55-mile per hour zone. Trooper Nelson approached the driver's side of the vehicle and, while Gesinger was still sitting inside, Trooper Nelson detected the odor of alcohol. Trooper Nelson told Gesinger he was being stopped for speeding, asked to see his driver's license, and asked Gesinger to have a seat in the patrol car. Gesinger obliged.

[¶ 3.] Trooper Nelson joined Gesinger in the patrol car and issued him a speeding ticket. At that time, Trooper Nelson detected a stronger odor of alcohol emanating from Gesinger and also noted Gesinger's slurred speech. Trooper Nelson asked Gesinger "if he had anything to drink" and Gesinger replied he "had a couple of drinks." Trooper

Nelson did not inform Gesinger of his *Miranda* rights at this time. He would later testify Gesinger was not free to leave the patrol car, although he did not communicate this to Gesinger.

[¶4.] After Gesinger failed several field sobriety tests, Trooper Nelson arrested him for DUI, and took him in handcuffs to the Potter County Jail. At the jail, Gesinger's handcuffs were removed and he was informed of his *Miranda* rights for the first time. Gesinger waived his rights and agreed to speak with Trooper Nelson. When asked again by Trooper Nelson if he had been drinking, Gesinger replied in the affirmative. When asked what and how much he had had to drink, Gesinger replied "four or five ... Lords and 7s." Gesinger's statements made at this time, as well as his statements made to Trooper Nelson while sitting in the patrol car, are the subject of this appeal. The facts are not in dispute.

[¶5.] Gesinger moved for suppression of these statements claiming they were involuntarily made and made during a custodial interrogation without his having been informed of his *Miranda* rights. He claimed his statements made after he had been *Mirandized* were tainted under the "fruit of the poisonous tree" doctrine. Following a hearing, the trial court agreed and ordered both sets of statements suppressed, finding that Gesinger's constitutional rights against self-incrimination had been violated.

[¶6.] State petitioned this Court for intermediate appeal of the trial court's order. We granted the petition and State raises the following issues:

1. Whether the trial court erred in concluding Gesinger's statements, given both before and after *Miranda* warnings were issued, were involuntary?

2. Whether the trial court erred in concluding that Gesinger was subjected to custodial interrogation while seated in the patrol car?

3. Whether the trial court erred in holding the statements given after Gesinger was *Mirandized* were tainted as "fruit of the poisonous tree?"

## STANDARD OF REVIEW

[¶7.] In *Thompson v. Keohane*, —— U.S. ——, ——, 116 S.Ct. 457, 460, 133 L.Ed.2d 383 (1995), the Supreme Court held that "whether a suspect is 'in custody,' and therefore entitled to *Miranda* warnings, presents a mixed question of law and fact qualifying for independent review."

[¶8.] We recently stated that we review a trial court's decision on a suppression motion under an abuse of discretion standard of review. *State v. Ramirez*, 535 N.W.2d 847, 848 (S.D.1995) (citing *State v. Flegel*, 485 N.W.2d 210, 213 (S.D.1992)). "Unless such discretion is exercised to an end or purpose not justified by, and clearly against reason and evidence, the trial court's decision should stand." *Id.* (citing *State v. Almond*, 511 N.W.2d 572, 574 (S.D.1994)).

[¶9.] We have also held that a finding of voluntariness by the trial court is binding upon this Court unless it is found to be clearly erroneous. *State v. DeNoyer*, 541 N.W.2d 725, 731 (S.D.1995) (citing *State v. Tapio*, 459 N.W.2d 406, 411 (S.D.1990)). "'In reviewing the trial court's findings, we consider the evidence in the light most favorable to the finding.'" *Id.* The State has the burden of proving beyond a reasonable doubt that Gesinger's statements were given voluntarily. *State v. Blue Thunder*, 466 N.W.2d 613, 616 (S.D.1991) (citing *State v. Volk*, 331 N.W.2d 67, 70 (S.D.1983)).

[¶10.] We proceed to address the issues in the same order as presented to us by the State in its appeal.

## ANALYSIS AND DECISION

[¶11.] **1. Whether the trial court erred in concluding Gesinger's statements, given both before and after *Miranda* warnings were issued, were involuntary?**

[¶12.] The test for determining voluntariness of incriminating statements or confessions requires the trial court to consider the effect the totality of the circumstances had upon the will of the defendant and whether that will was overborne. *State v. Oltmanns*, 519 N.W.2d 602, 605 (S.D.1994) (citing *State v. Dickey*, 459 N.W.2d 445, 447

(S.D.1990); *State v. Jenner,* 451 N.W.2d 710, 716 (S.D.1990); *State v. Hartley,* 326 N.W.2d 226 (S.D.1982); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). " '[T]he question we must answer is not whether the interrogators' statements were the cause of [Gesinger's] confession, but whether those statements were so manipulative or coercive that they deprived [him] of his ability to make an unconstrained, autonomous decision to confess.' " *State v. Kaiser,* 504 N.W.2d 96, 101 (S.D.1993) (*Kaiser I* ) (quoting *Dickey,* 459 N.W.2d at 448).

[¶ 13.] We recently examined the factors the trial court must consider in determining whether the defendant's will was overborne. *State v. Darby,* 1996 SD 127, ¶ 28, 556 N.W.2d 311. Therein, we cited these factors as including: 1) the defendant's youth; 2) the defendant's lack of education or low intelligence; 3) the absence of any advice to the defendant of his constitutional rights; 4) the length of detention; 5) the repeated and prolonged nature of the questioning; and 6) the use of physical punishment such as the deprivation of food or sleep. *Id.* (citing *Dickey,* 459 N.W.2d at 447). "A defendant's prior experience with law enforcement officers and the courts may also be a factor for the court's consideration." *Id.* at ¶ 30, 556 N.W.2d at 320 (citing *State v. Caffrey,* 332 N.W.2d 269, 272 (S.D.1983)).

[¶ 14.] The trial court found that Gesinger's "incriminating statement"[1] was not voluntarily made. We are bound by this finding unless it is clearly erroneous. *DeNoyer,* 541 N.W.2d at 731.[2] Here, Gesinger made his statement at approximately 10:45 p.m. on U.S. Highway 212, three or four miles west of Gettysburg, while sitting with Trooper Nelson in the patrol car. The evidence shows he was cooperative at all times in answering the officer's question and understood what was being asked of him. The evidence also shows Gesinger was 46 years old at the time and had prior experience with a traffic stop of this type, having been previously arrested for DUI. The questioning which led to Gesinger's incriminating statement began after he had been cited for speeding and, according to the evidence, within a matter of minutes from the time Gesinger was stopped. The questioning which led to this DUI charge was not long in duration, in fact, it consisted of only one question: have you had anything to drink? Thereafter, Trooper Nelson performed field sobriety tests on Gesinger.

[¶ 15.] We cannot find, under the totality of the circumstances which must be considered, that Gesinger's statements were the product of police coercion or that his will was overborne. *State v. Corder,* 460 N.W.2d 733, 737 (S.D.1990). Accordingly, we find the trial court was clearly erroneous in determining Gesinger's statements, both before and after the *Miranda* warnings were given, to have been involuntarily made and we reverse the trial court on this issue. *Compare Blue Thunder,* 466 N.W.2d at 618 (defendant's statements found by this Court to be involuntary where defendant was kept in police car for 45 minutes while "dead drunk" and extensively questioned).

[¶ 16] **2. Whether the trial court erred in concluding that Gesinger was subjected to custodial interrogation while seated in the patrol car?**

[¶ 17.] When analyzing whether an individual is "in custody" for purposes of activating the need for *Miranda* warnings, "a court must examine all of the circumstances surrounding the interrogation," *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994), but "the ultimate inquiry is simply whether there [was] a

---

1. While it is not necessary for disposition of this appeal to determine whether the statement made to the Trooper is incriminatory, we would note that driving after the consumption of an alcoholic beverage by a person over the age of 21, is not per se illegal in South Dakota. Possession of an unsealed alcoholic beverage in a motor vehicle is a crime, SDCL 35–1–9.1, as is driving a motor vehicle while under the influence of an alcoholic beverage or with .10 percent or more by weight of alcohol in the driver's blood, SDCL 32–23–1.

Here the Trooper, prior to the arrest, only asked Gesinger "if he had anything to drink?"

2. The trial court's ruling from the bench focused on the custodial nature of the interrogation without a discussion of voluntariness. However, the court's findings and conclusions reflect its conclusion that Gesinger's statement made in the patrol car was not voluntary.

'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)). "[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warning to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Darby*, 1996 SD 127, ¶ 25, 556 N.W.2d at 319 (quoting *Oregon*, 429 U.S. at 495, 97 S.Ct. at 714, 50 L.Ed.2d at 719). *See Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 335 (1984) (Supreme Court refusing to carve out an exception from the *Miranda* requirement for traffic offenses and holding "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*.").

[¶ 18.] Trooper Nelson testified that Gesinger was not free to leave. However, we stated in *State v. Hall*, 353 N.W.2d 37, 41 (S.D.1984) (citing *State v. Branch*, 298 N.W.2d 173 (S.D.1980)), it is not the patrolman's knowledge or belief that a defendant was not free to leave that is relevant. "[T]he important consideration is [Gesinger's] perception and intent regarding his freedom to leave." *Id; see also Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151, 82 L.Ed.2d at 336 ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."). Gesinger did not testify at the hearing. Nevertheless, the trial court, in finding Gesinger's perception was that he was not free to leave the patrol car, noted "anyone who is told to come back to an officer's car knows that they can't leave until the officer says they can leave and it's

stretching it somewhat to think that he could just get up and take off."

[¶ 19.] As noted above, the United States Supreme Court addressed this issue in 1984 and expressly declined to carve out an exception from *Miranda* for traffic offenses. *Berkemer*, 468 U.S. at 429, 104 S.Ct. at 3145, 82 L.Ed.2d at 328. One reason the Court gave for its refusal to do so was the clarity of the *Miranda* rule. *Id.* Specifically discussing a factual situation similar to that presented in the case before us, the Court further noted:

> We cannot agree [with petitioner, an Ohio county sheriff] that the dangers of police abuse are so slight in this context [stopped for a misdemeanor traffic offense]. For example, the offense of driving while intoxicated is increasingly regarded in many jurisdictions as a very serious matter. Especially when the intoxicant at issue is a narcotic drug rather than alcohol, the police sometimes have difficulty obtaining evidence of this crime. Under such circumstances, the incentive for the police to try to induce the defendant to incriminate himself may well be substantial. Similar incentives are likely to be present when a person is arrested for a minor offense but the police suspect that a more serious crime may have been committed.

*Berkemer*, 468 U.S. at 432–33, 104 S.Ct. at 3146, 82 L.Ed.2d at 330.

[¶ 20.] The second issue addressed by the *Berkemer* Court was: "whether the roadside questioning of a motorist detained pursuant to a routine traffic stop should be considered 'custodial interrogation.'" 468 U.S. at 435, 104 S.Ct. at 3147–48, 82 L.Ed.2d at 331. The *Berkemer* Court held it should not. This holding was affirmed in 1988 in *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988), under facts similar to *Berkemer* and the facts at issue here. There exists one notable exception to the similarity of facts in these three cases: there is no evidence that the defendants in *Berkemer* or *Bruder* were placed inside the patrol car during questioning as was Gesinger.

[¶ 21.] Both State and Gesinger rely on *Berkemer* to support their arguments to this Court. Gesinger relies on the first portion of the Supreme Court's opinion holding that

*Miranda* requirements apply to all custodial interrogations, whether a result of a felony or a misdemeanor traffic offense. 468 U.S. at 434, 104 S.Ct. at 3147, 82 L.Ed.2d at 331. Beyond this, Gesinger attempts to distinguish *Berkemer* from the present case on its facts. State relies on the second portion of the opinion, arguing that until Gesinger was arrested, he was not in custody. After considering *Berkemer* in its entirety, and other cases addressing this issue, we conclude Gesinger was not subjected to custodial interrogation while seated in the patrol car under the totality of the circumstances present here. *See United States v. Smith,* 441 F.2d 539 (9th Cir.1971) (officer's unexpressed intent to detain defendant had he attempted to leave did not create custodial interrogation); *State v. Herem,* 384 N.W.2d 880 (Minn.1986) (under similar facts, police officer's brief interrogation of defendant in patrol car was not custodial interrogation requiring *Miranda* warnings); *State v. Martin,* 543 N.W.2d 224, 227 (N.D.1996) (questioning defendant in patrol car rather than in defendant's own car does not render defendant "in custody"); *State v. Warrell,* 41 Ohio App.3d 286, 534 N.E.2d 1237, 1239 (1987) (on appeal from DUI conviction, the court held "[s]imply requiring defendant to sit in a police car for a short period of time to answer a few questions did not elevate the situation beyond the realm of the ordinary traffic stop approved in *Berkemer.*"). *See also Darby,* 1996 SD 127, ¶ 26, 556 N.W.2d at 319 (noting this Court's previous holding that "a closed, or even a locked, door does not, in and of itself, create a custodial interrogation." (citing *State v. McQuillen,* 345 N.W.2d 867, 870 (S.D.1984)). *Compare United States v. Henley,* 984 F.2d 1040, 1042 (9th Cir.1993) (custodial questioning of defendant by FBI agent while defendant was handcuffed in back of police car); *United States v. Schultz,* 442 F.Supp. 176, 180 (D.Md.1977) (defendant, having been stopped for erratic driving, subjected to persistent questioning in police car about alcohol and marijuana use, and denied permission to contact his mother was held to have been in custody for purpose of *Miranda* by the time he confessed to possession of a sawed-off shotgun); *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517, 518–19 (1980) (driver de-tained at scene for 45 minutes, part of the time in a patrol car, during which second patrolman was called to scene, was held to be in custody for purposes of *Miranda* by the time he was questioned concerning circumstances of accident); *State v. Fasching,* 453 N.W.2d 761 (N.D.1990) (questioning of driver while she was locked in patrol car and while her attorney was directed to remain in other car was custodial interrogation, characterized by the court as "sustained and intimidating").

[¶ 22.] Gesinger has failed to show that at any time between the stop and his arrest, his freedom of movement was restrained to a degree associated with a formal arrest, thus rendering him "in custody" for *Miranda* purposes. The period of elapsed time between the stop and the arrest was of a short duration. Trooper Nelson asked Gesinger only one question: have you had anything to drink, to which Gesinger answered that he had a couple of drinks. At that point, Trooper Nelson took Gesinger through some field sobriety testing in the patrol car. They then stepped out of the car where Trooper Nelson requested Gesinger perform several field sobriety tests which would have been in full view of any passing motorists. The *Berkemer* Court regarded these two features of the ordinary traffic stop as mitigating the danger that the person questioned would be induced "to speak where he would not otherwise do so freely:" 1) that traffic stops are presumptively temporary and brief; and 2) that traffic stops involve circumstances such that the motorist does not feel completely at the mercy of the police, *i.e.,* they are conducted in public view, usually only one or two officers are involved, and the atmosphere is substantially less "police dominated" than in the cases applying *Miranda.* 468 U.S. at 437–38, 104 S.Ct. at 3149, 82 L.Ed.2d at 333 (quoting *Miranda v. Arizona,* 384 U.S. 436, 467, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966)).

[¶ 23.] We hold the trial court erred in finding Gesinger was subjected to a custodial interrogation under the circumstances present and reverse on this issue.

[¶ 24.] **3. Whether the trial court erred in holding the statements given after**

Gesinger was *Mirandized* were tainted as "fruit of the poisonous tree?"

[¶ 25.] The second set of incriminating statements was made at the jail, after Gesinger had been read his *Miranda* rights. The trial court claimed this to be a "classic case of the fruit-of-the-poisonous tree" doctrine in that these statements were an extension of Gesinger's earlier involuntary statements made in the patrol car, and could not be later cured by informing him of his constitutional rights. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Since we have reversed the trial court on the voluntariness of these statements, which finding provides the underpinning for the trial court's determination on this issue, we reverse on issue three.

## CONCLUSION

[¶ 26.] We hold the trial court abused its discretion in granting Gesinger's motion to suppress the statements he made in the patrol car and in jail regarding his alcohol consumption under the totality of the circumstances present. We reverse.

[¶ 27.] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

