1998 SD 128

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Michelle RICHARDS, Defendant and Appellee.**

No. 20493.

Supreme Court of South Dakota.

Considered on Briefs on Dec. 3, 1998.

Decided Dec. 23, 1998.

Mark Barnett, Attorney General, Todd A. Love, Assistant Attorney General, Pierre, for plaintiff and appellant.

Bruce Ellison, Rapid City, for defendant and appellee.

AMUNDSON, Justice.

[¶ 1.] State appeals trial court's order granting Michelle Richards' (Richards) motion to suppress evidence. We reverse.

## FACTS

[¶2.] On July 15, 1996, Rapid City Police Officer Kyle Akers stopped a vehicle driven by Misty Bradford (Bradford), in which Richards was a passenger. Officer Akers was requested by a police radio broadcast from Rapid City Police Detective Dale McCabe to stop the vehicle, but was not provided the reason for the request.

[¶3.] The events leading up to the stop in question are as follows. Bradford had been under investigation for drug-related activities. On July 9, 1996, a confidential informant employed by the South Dakota Division of Criminal Investigation (DCI) made a controlled drug purchase from Bradford. The transaction took place in Bradford's vehicle.

[¶4.] Investigators became suspicious of Bradford's involvement in a larger drug conspiracy after observations obtained through surveillance conducted the next few days. On July 15, 1996, Bradford was seen meeting with two persons who were known drug dealers at a Rapid City motel. After this observation, the vehicle containing the two known drug dealers was stopped. A search of the vehicle uncovered a large amount of cash, some of which the serial numbers could be traced back to the July 9, 1996, controlled purchase conducted by the informant. Ricardo Conrado, one of the occupants of the vehicle, was interviewed by officers. Conrado told the officers that he had distributed drugs to Bradford.

[¶5.] Later that same evening on July 15, 1996, DCI Agent Buszko and Detective McCabe observed Bradford driving the same vehicle in which the drug transaction had taken place. At the time of this observation, Buszko and McCabe were driving an unmarked police vehicle. Detective McCabe contacted law enforcement dispatch by radio and requested the assistance of a marked vehicle, equipped with sirens and lights, to make a traffic stop.[1] Officer Akers responded. Detective McCabe provided Officer Akers with a description and location of the vehicle and requested Officer Akers stop the vehicle. McCabe did not inform Officer Akers of his reason for his request.

[¶6.] Officer Akers stopped the vehicle. Agent Buszko and Detective McCabe, along with other agents of the drug task force and a highway trooper, arrived shortly thereafter.

[¶7.] As a result of the traffic stop, Bradford's passenger, Misty Richards was arrested. Richards was arrested for open container. Officers searched the vehicle incident to arrest and controlled substances were discovered.

[¶8.] Richards was indicted March 12, 1997, on one count of possession of a controlled substance. The trial court granted Richards' motion to suppress evidence seized as a result of the traffic stop. State appeals, raising the following issue:

> Whether the trial court improperly limited the doctrine of collective knowledge in concluding that the reasonable suspicion possessed by Agent Buszko and Detective McCabe was not transferred to Officer Akers.

## STANDARD OF REVIEW

[¶9.] This appeal concerns whether the circuit court applied the correct legal standard to the facts in this case. "Questions requiring application of a legal standard are reviewed as are questions of law—de novo." *Voeltz v. John Morrell & Co.*, 1997 SD 69, ¶9, 564 N.W.2d 315, 316 (citing *Phipps Bros. Inc. v. Nelson's Oil & Gas, Inc.*, 508 N.W.2d 885, 888 (S.D.1993)) (other citations omitted). We give no deference to the circuit court under this standard of review. *Id.* (citing *In re Sales & Use Tax Refund Request of Media One, Inc.*, 1997 SD 17, ¶11, 559 N.W.2d 875, 878). If we determine under de novo review that the circuit court erred in stating the law and the error was not harmless, the circuit court's decision to suppress must be reversed. *State v. Engel*, 465 N.W.2d 787, 789 (S.D.1991).

## DECISION

[¶10.] **Whether the trial court improperly limited the doctrine of collective knowl-**

---

1. DCI Agent Buszko testified that it is common practice to request the assistance of a marked police unit to make traffic stops in such situations.

edge in concluding that the reasonable suspicion possessed by Agent Buszko and Detective McCabe was not transferred to Officer Akers.

[¶ 11.] The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures and is implicated when a vehicle is stopped. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). In order to stop a vehicle, law enforcement must have a reasonable suspicion based on specific and articulable facts that its occupants are involved in criminal activity. *United States v. Brignoni–Ponce,* 422 U.S. 873, 880, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975). A stop of a vehicle is a seizure of all its occupants; thus, a passenger has standing to challenge the stop. *State v. Krebs,* 504 N.W.2d 580, 584 (S.D.1993) (citing *United States v. Erwin,* 875 F.2d 268, 270 (10th Cir.1989)).

[¶ 12.] At issue in this case is the stop of a vehicle by an officer in reliance on a request by another officer who indicated the description and location of vehicle, but did not communicate his reason for requesting the stop. The trial court reasoned because there was no evidence of any flyer, warrant, bulletin or any information given to Officer Akers to inform him what the occupants were suspected of, or wanted for any crime, Officer Akers had no reasonable or articulable basis to make the stop. In addition, since Officer Akers was not working with the Drug Task Force investigating the vehicle or its occupants, the traffic stop could not be justified by any "collective knowledge" which may have been possessed by Drug Task Force, but not Officer Akers. The trial court concluded since Officer Akers had no articulable nor reasonable suspicion to make the stop, the stop violated Richards' constitutional right against unreasonable search and seizure and any fruits of same must be suppressed. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *United States v. Jefferson,* 906 F.2d 346, 348 (8th Cir.1990).

[¶ 13.] State relies on *United States v. Hensley* as authority that the officer executing the stop need not possess reasonable suspicion as long as the officer issuing the request for the stop has the requisite reasonable suspicion to make a stop. 469 U.S. 221, 232–33, 105 S.Ct. 675, 682, 83 L.Ed.2d 604 (1985). Unlike the present case, in *Hensley,* the stopping officer relied upon a written flier with information contained therein to make a stop. Upon those facts, the United States Supreme Court stated it was not necessary that the officer who carried out the stop have a reasonable suspicion justifying the stop, instead, "evidence uncovered in the course of the stop is admissible if the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop, and if the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department." *Hensley,* 469 U.S. at 233, 105 S.Ct. at 682, 83 L.Ed.2d 604 (emphasis in original) (internal citation omitted).

[¶ 14.] While *Hensley* is distinguishable from the present case, given the existence of a written flyer with information contained therein, the language from *Hensley* suggests the appropriate analysis is whether the requesting officer had the requisite reasonable suspicion or probable cause. *Hensley,* 469 U.S. at 233, 105 S.Ct. at 682, 83 L.Ed.2d 604. If the requesting officer does possess reasonable suspicion, that is imputed to the officer executing the stop. *See Jones v. Watson,* 106 F.3d 774, 780 n.9 (7th Cir. 1997) (noting, "[o]f course, [police commander's] probable cause determination may be imputed to the officers who actually effected appellant's arrest."). Borrowing language from the Ninth Circuit, the Supreme Court in *Hensley* recognized the necessity of law enforcement relying upon one another stating: " '[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and that officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information.' " *Hensley,* 469 U.S. at 231, 105 S.Ct. at 682, 83 L.Ed.2d 604 (quoting *United States v. Robinson,* 536 F.2d 1298, 1299 (9th Cir.1976)). *See also Whiteley v. Warden,* 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971) (stating, "[c]ertainly police officers called

upon to aid other officers in executing arrest warrants are entitled to assume that the officers requesting aid offered the magistrate the information requisite to support an independent judicial assessment of probable cause."); *United States v. Armendariz–Mata*, 949 F.2d 151, 153 (5th Cir.1991) (stating, "although the arresting officers were not directly involved in the negotiations with appellant, they were entitled to rely upon the information conveyed to them by the other agents [to establish probable cause]"), *cert. denied*, 504 U.S. 945, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992).

■ [¶ 15.] South Dakota has recognized the necessity of law enforcement relying upon each other for determinations of reasonable suspicion and probable cause through the collective knowledge doctrine. *See Krebs*, 504 N.W.2d at 586; *State v. Baysinger*, 470 N.W.2d 840, 845 (1991); *State v. Czmowski*, 393 N.W.2d 72, 73 (1986). "The collective knowledge doctrine is designed to allow law enforcement personnel from the same agency, or from different jurisdictions, to rely on the probable cause determinations of one another in order to apprehend specific suspects." *Maltby v. Winston*, 36 F.3d 548, 564 n.26 (7th Cir.1994), *cert. denied*, 515 U.S. 1141, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995).

[¶ 16.] While this Court has not ruled whether information has to be relayed to stopping officer, similar facts were presented in *Czmowski*, 393 N.W.2d at 72. There, a law enforcement dispatcher received an anonymous call reporting a possible drunk driver. The information was relayed to Trooper Hindman. Hindman in turn radioed an officer at the port-of-entry station. He described the vehicle, gave its license number and asked the port-of-entry officer to detain the driver. *Id.* at 72–73. When the vehicle approached, although the port-of-entry officer did not notice anything unusual, relying upon the radio request, the officer asked the driver to park in the back and wait for Trooper Hindman to arrive. Addressing the question whether it was necessary for the port-of-entry officer to possess reasonable suspicion in order to make the stop, the

Court stated that the officer making a stop was not required to have independent knowledge to justify the stop. *Id.* at 73. Instead, " '[i]n assessing police justifications for arrests or intrusions of a type less offensive than full arrests, we take an objective view of all the facts and may evaluate the knowledge of all the officers collectively.' " *Id.* at 73 (quoting *Brewer v. Wolff*, 529 F.2d 787, 790 (8th Cir.1976)) (other citations omitted).

[¶ 17.] A similar situation occurred in *United States v. Kapperman*, 764 F.2d 786 (11th Cir.1985). There, detectives had placed the defendant under surveillance. While they were trailing him, the detectives lost defendant when he took evasive action. The Officers radioed a description of the car to another patrol unit and instructed him to stop the car and detain defendant for questioning. When the requesting officers arrived at the scene, defendant was in the back of the patrol car. The court stated:

> "That [the arresting officer who had not participated in earlier investigation] may not have known all of the facts already uncovered in the investigation does not render the 'arrest' unlawful. When there is minimal communication between different officers, we look to the collective knowledge of the officers in determining probable cause. *United States v. Astling*, 733 F.2d 1446, 1460 (11th Cir.1984). Further, [arresting officer] was entitled to act on the strength of the radio communication directing him to 'stop the vehicle and secure the scene.' *See Whiteley*, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306 (1971)."

*Kapperman*, 764 F.2d at 791 n5.

■ [¶ 18.] A review of case law indicates whether or not probable cause or reasonable suspicion exists is determined by considering the information possessed by the requesting officer. This Court has been cited to no authority establishing the rationale that a specific quantum of information justifying a stop must be relayed to the stopping officer before the stop is upheld.[2] Instead, the facts and knowledge of all the officers are viewed

2. Richards admits in her brief that had Detective McCabe stated to Officer Akers, "stop the vehicle because the driver is suspected in a drug crime," the stop would have been valid.

collectively. *Krebs,* 504 N.W.2d at 586; *Baysinger,* 470 N.W.2d at 845–46; *Czmowski,* 393 N.W.2d at 73. In this case, upon reviewing the facts, Detective McCabe and the other Drug Task Force agents had sufficient information constituting reasonable suspicion to make the stop.

[¶ 19.] We reverse.

[¶ 20.] MILLER, Chief Justice, SABERS, KONENKAMP, and GILBERTSON, Justices, concur.

