1999 SD 158

STATE of South Dakota, Plaintiff
and Appellant,

v.

Joe M. VENTO, Defendant
and Appellee.

No. 20841.

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1999.

Decided Dec. 22, 1999.

Mark Barnett, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellant.

Michael Stonefield, Pennington County Public Defender's Office, Rapid City, South Dakota, Attorney for defendant and appellee.

SABERS, Justice.

[¶ 1.] The trial court granted Vento's motion to suppress evidence. The State filed a petition for intermediate appeal, which we granted. We reverse and remand for trial.

## FACTS

[¶ 2.] On August 13, 1998, Officer Harrison stopped Vento for failing to display a front license plate, a violation of SDCL 32–5–98.[1] After stopping Vento, he saw that a license plate was lying flat in the front windshield on the passenger side. He later testified (incorrectly) that a license plate in this location is "absolutely" in an appropriate place.

[¶ 3.] After seeing that a license plate was indeed displayed, Harrison asked for Vento's driver's license. It was then that Harrison learned that Vento's license had been revoked from January 27, 1998 until January 27, 2000. Vento was arrested for driving under revocation (SDCL 32–12–65(1)) as well as for failing to maintain financial responsibility (SDCL 32–35–113). However, the complaint included only the driving under revocation charge.

[¶ 4.] On November 25, 1998, Vento filed a "Motion to Suppress Stop," which the trial court granted. In its Order, the trial court found that "once the officer saw [the] license plate, he no longer had any specific and articulable suspicion of any violation of law by the defendant." Thus, the trial court concluded: "all evidence and observations obtained by law enforcement following the discovery of the front windshield license plate by the arresting officer be and hereby are suppressed." The State appeals.

## STANDARD OF REVIEW

[¶ 5.] We review the trial court's grant or denial of a motion to suppress under the abuse of discretion standard. *State v. Anderson*, 1996 SD 59, ¶ 8, 548 N.W.2d 40, 42 (citations omitted). The trial court's findings to support a motion to suppress are reviewed under the clearly erroneous standard. *State v. Stetter*, 513 N.W.2d 87, 91 (S.D.1994) (citations omitted). Questions regarding the application of a legal standard are reviewed de novo. *State v. Richards*, 1998 SD 128, ¶ 9, 588 N.W.2d 594, 595. "Of course, by definition, a decision based on an error of law is an abuse of discretion." *Id.* (citation omitted).

[¶ 6.] **WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING VENTO'S MOTION TO SUPPRESS.**

[¶ 7.] The State argues, despite what Officer Harrison subjectively believed, the location of Vento's license plate was not in accordance with SDCL 32–5–98. The State explains that the statute was not complied with because the license plate was not "conspicuously displayed," was not "securely fastened," nor was it displayed "horizontally and in an upright position." "[B]ecause the license plate was not 'con-

---

1. This statute provides, in part:

   Except as otherwise specifically provided, no person may operate or drive a motor vehicle on the public highways of this state unless such vehicle shall have a distinctive number assigned to it by the department, and two number plates, bearing such number conspicuously displayed, horizontally and in an upright position, one on the front and one on the rear of such vehicle, each securely fastened.

   SDCL 32–5–98.

spicuously displayed' as required by SDCL 32–5–98, Officer Harrison had an 'objective reasonable articulable suspicion' that a traffic violation 'has occurred or is occurring;'" his subjective beliefs were irrelevant. The State, therefore, asserts that Harrison was justified in detaining Vento until the purpose of the stop was fulfilled.

[¶ 8.] "The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures and is implicated when a vehicle is stopped." *Richards*, 1998 SD 128, ¶ 11, 588 N.W.2d at 596 (citing *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667 (1979)). A police officer must have a reasonable suspicion to stop an automobile. This has been further interpreted to require the officer to have a "specific and articulable suspicion of a violation before a[n] [automobile] stop will be justified." *State v. Cuny*, 534 N.W.2d 52, 53 (S.D.1995). The factual basis required to support the stop is as follows:

> [T]he stop [must not be] the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion[.]'

*Id.* (quoting *State v. Anderson*, 331 N.W.2d 568, 570 (S.D.1983)) (other citation omitted). Whether reasonable suspicion existed when the stop was made is a determination based on an objective standard: "[w]ould the facts observable to the law enforcement officer at the time of the [stop] entitle an officer of reasonable caution to believe the action taken was appropriate?" *State v. Ashbrook*, 1998 SD 115, ¶ 9, 586 N.W.2d 503, 507 (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968) (citation omitted)). "Simple good faith is not enough; the officer must possess an objectively reasonable belief." *Id.* (citing *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906 (citation omitted)).

[¶ 9.] Vento agrees that Officer Harrison had reasonable suspicion to stop him for failing to have his front license plate conspicuously displayed. However, Vento argues that the detention should have ended once Harrison discovered that there was indeed a front license plate displayed in his front windshield, a location Harrison subjectively believed to be legal.

[¶ 10.] Objectively, Vento violated SDCL 32–5–98 by laying the plate flat in his front windshield. He did not conspicuously display the plate; otherwise, he would not have been stopped in the first place. Furthermore, a license plate can not be securely fastened to the front windshield without obstructing the driver's "clear view of the highway or any intersecting highway" as prohibited by SDCL 32–15–5. If the plate were to be securely fastened to the dash, then it would not be in an upright position.

[¶ 11.] Despite Harrison's subjective beliefs that the license plate was displayed in a proper location, Harrison was objectively justified in proceeding with the detention of Vento after observing the plate in the windshield, which is a violation of SDCL 32–5–98. In *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89, 98 (1996), the United States Supreme Court stated: "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *See also Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168, 177 (1978) (stating that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action"); *United States v. Cummins*, 920 F.2d 498, 501 (8th Cir.1990) (noting a standard of objective reasonableness is required for a stop), *cert. denied*, 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448 (1991).

[¶ 12.] The State relies on an analogous case. In *United States v. Tipton,* 3 F.3d 1119 (7th Cir.1993), police officers stopped Tipton for failing to display a license plate at the rear and front areas of the vehicle. *Tipton,* 3 F.3d at 1121. Once they stopped the vehicle, they discovered that "a temporary license sticker had partially fallen off the inside of the rear window and was lying on the back shelf but was not readily visible." *Id.* The officers then asked the driver and the passenger, Willie Tipton, for identification. *Id.* After the officers determined that the occupants falsified their identities, they were arrested for obstruction of justice and taken to the local police station. *Id.* Crack cocaine was found in the police car after Tipton got out and Tipton was also charged with a drug offense. *Id.*

[¶ 13.] Tipton contended that "once the officers saw the sticker, they no longer had reasonable suspicion to question the occupants." *Id.* at 1122. The court stated: "[p]olice officers are justified in conducting a brief investigative *Terry* stop if an officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.* (quoting *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906) (other citations omitted).

[¶ 14.] "In addition, the Fourth Amendment is no bar to the police 'stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one.'" *Id.* (quoting *United States v. Mitchell,* 951 F.2d 1291, 1295 (D.C.Cir.1991)). The court held that the police officers were justified in detaining Tipton even after seeing the temporary license sticker:

> Nor were the officers obliged to abort the stop even if they had noticed the improperly affixed sticker prior to questioning. A driver with a temporary sticker is obliged to display the sticker prominently at all times, and in this case the sticker was not readily visible.

*Id.* at 1123. *See also United States v. Dexter,* 165 F.3d 1120 (7th Cir.1999) (reiterating that the stop and detention in *Tipton* were valid); *United States v. Dumas,* 94 F.3d 286, 290 (7th Cir.1996) (quoting *Tipton:* "[t]he driver's failure to display *prominently* a registration sticker, alone, would provide an officer with reasonable suspicion sufficient to justify at the very least an investigatory stop") (emphasis in original).

[¶ 15.] Harrison had an articulable suspicion that Vento violated the law and he was justified, from the inception, in stopping Vento. Displaying the license plate in the front windshield in that manner is objectively a violation of SDCL 32–5–98. Thus, Harrison was also justified in "conducting a brief investigative *Terry* stop." *See Tipton,* 3 F.3d at 1122. This includes the officer's request for the driver's license, vehicle registration, and proof of insurance. *See United States v. Finke,* 85 F.3d 1275, 1279–80 (7th Cir.1996);[2] *United States v. McRae,* 81 F.3d 1528, 1534 (10th Cir.1996).[3] Officer Harrison conducted a valid stop of Vento and complied with the Fourth Amendment. Furthermore, the detention was temporary and did not last longer than necessary "to effectuate the purpose of the stop." *Flori-*

---

**2.** The *Finke* court stated not only are license and warrant requests reasonable in a traffic stop, but a criminal history check is also reasonable as long as the check does not extend the reasonableness of the detention. *Finke,* 85 F.3d at 1279–80.

**3.** The court in *McRae* stated:
> An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

*McRae,* 81 F.3d at 1534 (quoting *United States v. Gonzalez–Lerma,* 14 F.3d 1479, 1483 (10th Cir.1994) (other citations omitted)).

*da v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238 (1983).

[¶ 16.] Because we determine that the trial court abused its discretion in granting Vento's motion to suppress, we do not reach the State's second argument that the trial court improperly went beyond the scope of Vento's motion.

[¶ 17.] We reverse and remand for trial.

[¶ 18.] MILLER, Chief Justice, and KONENKAMP and GILBERTSON, Justices, concur.

[¶ 19.] AMUNDSON, Justice, dissents.

AMUNDSON, Justice (dissenting).

[¶ 20.] I dissent.

[¶ 21.] As the river flows through its bank, erosion occurs. As decisions like this are handed down, an individual's constitutional rights are eroded away. By use of these objective tests, there is a potential for further abuse.

> "[T]o eliminate any requirement that an officer be able to explain the reasons for his actions signals an abandonment of effective judicial supervision of this kind of seizure and leaves police discretion utterly without limits. Some citizens will be subjected to this minor indignity while others–perhaps those with more expensive cars, or different bumper stickers, or different-colored skin–may escape it entirely."

*State v. Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237, 1240 (1984) (quoting *Pennsylvania v. Mimms,* 434 U.S. 106, 122, 98 S.Ct. 330, 339, 54 L.Ed.2d 331, 344 (1977) (Stevens, J., dissenting)). The present case is another example of an open-door policy for police discretion.

[¶ 22.] This Court has often stated that, in reviewing the trial court's findings of fact under the clearly erroneous standard, we will " 'determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made.' " *State v. Durke,* 1999 SD 39, ¶ 11, 593 N.W.2d 407, 409 (quoting *State v. Baysinger,* 470 N.W.2d 840, 843 (S.D.1991) (citing *State v. Corder,* 460 N.W.2d 733 (S.D.1990))). In addition, the trial court's decision to suppress evidence will stand " '[u]nless such discretion is exercised to an end or purpose not justified by, and clearly against reason and evidence.' " *Id.* (quoting *State v. Gesinger,* 1997 SD 6, ¶ 8, 559 N.W.2d 549, 550 (citations omitted)).

[¶ 23.] It is clear from reviewing the record and the applicable case law that Officer Harrison had probable cause to pull over Vento for failing to have his license plate attached in the proper place, a violation of SDCL 32–5–98. The question before this Court is whether upon observing the license plate in the window of Vento's vehicle the officers had any further reason to question Vento. This is a question of first impression in this Court. In other jurisdictions, a split of authority exists as to whether the officer can continue his investigation after observing the license plate in the window of the car upon approaching the vehicle. *See People v. Redinger,* 906 P.2d 81 (Colo.1995); *United States v. McSwain,* 29 F.3d 558 (10th Cir. 1994); *State v. Farley,* 308 Or. 91, 775 P.2d 835 (1989); *Chatton,* 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984). *See also State v. Henderson,* 291 Mont. 77, 966 P.2d 137, 141–42 (1998) (holding although the stop originated from a failure to display license plate or temporary sticker, based upon the facts, an escalating situation arose that gave the police officer further suspicion that enlarged the scope of his original investigation); *State v. Hill,* 606 A.2d 793, 795 (Me.1992) (finding that although officer's reason justifying the original stop had dissipated upon seeing the truck's license plate in the rear window, based upon the balancing of "State interest against the minimal further intrusion of asking Hill for [his license and registration] ... did not

unreasonably intrude on Hill's fourth amendment rights").

[¶ 24.] In *Redinger,* Redinger was pulled over by a police officer when the officer failed to see Redinger's license plate or temporary sticker on the rear of Redinger's vehicle. 906 P.2d at 82. As the officer approached the vehicle, he observed Redinger's valid temporary registration plate displayed in the rear window of the car. *Id.* The officer proceeded to explain to Redinger why he pulled him over and requested Redinger's drivers license, registration, and proof of insurance. *Id.* Upon presenting the drivers license, a small package of crystal methamphetamine fell from Redinger's pocket. *Id.* In affirming the trial court's suppression of the seized evidence, the court held:

> In this case, Wise [the police officer] stopped Redinger's vehicle because Wise had a reasonable suspicion that Redinger had violated the motor vehicle law. At the moment he stopped Redinger's vehicle Wise was authorized to investigate that reasonable suspicion. Prior to questioning Redinger, Wise learned from his investigation that his initial suspicion was unfounded and that no violation of the motor vehicle law had occurred. The purpose of the initial investigation having been satisfied, and in the absence of other basis for detention or questioning of Redinger, Wise's conduct in requiring Redinger to produce information without either reasonable suspicion or probable cause was unwarranted.

*Id.* at 86.

[¶ 25.] In *McSwain,* an officer stopped McSwain based upon a lack of either a front or rear license plate and an apparent illegible temporary registration sticker. 29 F.3d at 559–60. Upon approaching the vehicle, the officer observed the temporary registration sticker was from out-of-state and was not covered with reflective tape, but instead, utilized a new devise to prevent alteration of expiration dates. *Id.* The court held that once the officer saw a validly displayed registration certificate, the once valid purpose had been satisfied and any further detention of the vehicle to question McSwain or to request information was not warranted. *Id.* at 561.

[¶ 26.] In *Chatton,* a police officer pulled over Chatton after observing no front or rear license plates. 463 N.E.2d at 1237. Upon approaching the vehicle, the officer observed a temporary license on the rear deck below the rear window. *Id.* The officer subsequently requested Chatton to produce a valid drivers license which was found to be suspended. *Id.* In suppressing the evidence, the court found:

> [O]nce the police officer herein observed the temporary tags, [Chatton] could no longer be reasonably suspected of operating an unlicensed or unregistered vehicle.

> . . . .

> Consequently, where a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag is visible through the rear windshield, the driver of the vehicle may not be detained further to determine the validity of his driver's license absent some specific and articulable facts that the detention was reasonable.

*Id.*

[¶ 27.] Finally, in *Farley,* a state police officer stopped Farley for having no visible license plates, which was an apparent traffic violation. 775 F.2d at 836. The officer approached Farley's vehicle and noticed a valid temporary vehicle permit posted on the windshield. *Id.* Despite seeing the permit, the officer continued his normal police routine and requested Farley produce his driver's license which was found to be suspended. *Id.* In suppressing the suspended license evidence, the court found,

> the officer lawfully stopped [Farley] "for the purpose of investigation reasonably related to the [apparent] traffic infrac-

tion" of operating a vehicle without license plates. Having made a lawful stop, however, the officer could ask defendant to show his driver[s] license only for the purposes of investigation reasonably related to the stop. Upon seeing the temporary permit, the justification of any investigation was vitiated. Plain and simple, the officer had no statutory authority to proceed further. That authority ended with the officer's discovery that the traffic infraction he was investigating hâd not actually occurred.

*Id.* at 836.

[¶ 28.] In the present case, Officer Harrison failed to observe a front license plate on Vento's truck and had probable cause to pull him over for an apparent traffic infraction. Upon approaching Vento's vehicle, the officer observed the license plate lying in the front windshield. At this moment, Harrison's justification for any further investigation ended. The magistrate judge was present at the motion to suppress hearing and heard all of the testimony. Thereafter, the lower court considered the evidence, the case authority submitted by the parties, and the argument of the parties; then, correctly found no justification for the officer's actions. I would affirm the lower courts holding in this case in order to stop further erosion of individual constitutional rights.