1999 SD 39

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Ralph W. DURKE, Heather M. Cook, and Steven C. Taylor, Defendants and Appellees.**

**No. 20429.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 1999.

Decided March 31, 1999.

**408**

Mark Barnett, Attorney General, D. Mark Collins, Assistant Attorney General, Pierre, South Dakota, for plaintiff and appellant.

Timothy J. Rensch, Rapid City, South Dakota, for defendants and appellees, Durke and Cook.

Jeffrey A. Neary of Neary & Flannery, LeMars, IA, for defendant and appellee, Taylor.

SABERS, J.

[¶ 1.] The State appeals an intermediate order by the trial court suppressing evidence seized in searches of Ralph Durke, Heather Cook, and Steven Taylor. We affirm.

### FACTS

[¶ 2.] On August 5, 1997, Trooper Vlasman received a radio call regarding a group of motorcyclists running a car off the road. He later observed a group of seven motorcyclists traveling north on Interstate 29. He noticed that four of the motorcycles had handlebars which were too high under South Dakota law. He also noticed that the motorcyclists were wearing "colors" identifying them as members of two motorcycle groups, Sons of Silence and Iron Horsemen.

[¶ 3.] He initiated a stop of the group. Within a minute, Trooper Vlasman was joined by Trooper Nelson, Deputy Skogland, and a female deputy. The motorcyclists denied running anyone off the road. They were traveling to Sturgis, South Dakota for the annual motorcycle rally. Their driver's licenses and registrations were checked and no problems were found. The motorcycles which Durke, Cook, and Taylor rode were in compliance with South Dakota law. Vlasman told them they were free to go once the motorcycles with too high handlebars were in compliance with South Dakota law. However, as indicated within, it was not made clear to the individuals with proper handlebars that they were free to go.

[¶ 4.] While walking past the motorcycle driven by Carl Perry, Trooper Nelson stepped on a brass pipe. The pipe was identified as a marijuana pipe with residue of marijuana inside and the initials C.P. engraved on it. Perry was placed under arrest and searched. A search of his motorcycle revealed a loaded pistol.

[¶ 5.] After the pistol was found, the officers put the other motorcyclists in handcuffs or flexcuffs. The officers searched the individuals and their motorcycles, including the saddlebags. Some of the individuals were placed in the ditch while the searches were conducted.

[¶ 6.] Heather Cook was a passenger on Ralph Durke's motorcycle. Trooper Vlasman seized a waist bag from Cook and opened it. He found a loaded pistol with two bags of methamphetamine and cocaine attached to it by a rubber band. A small bag of marijuana was also found in the waist bag. A search of the saddlebags on Durke's motorcycle revealed marijuana in a cosmetic bag. A vial containing methamphetamine fell out of Taylor's pant leg while he was being searched.

[¶ 7.] Durke was charged with possession of a controlled substance (methamphetamine) with intent to distribute (SDCL 22–42–2), possession of a controlled substance (methamphetamine) (SDCL 22–42–5), possession of a controlled substance (cocaine) (SDCL 22–42–5), concealment of a weapon with intent to commit a felony (SDCL 22–14–8), and ingestion of an intoxicating substance (SDCL 22–42–15).

[¶ 8.] Cook was charged with possession of a controlled substance (methamphetamine) with intent to distribute (SDCL 22–42–2), possession of a controlled substance (methamphetamine) (SDCL 22–42–5), possession of a controlled substance (cocaine) (SDCL 22–42–5), and concealment of a weapon with intent to commit a felony (SDCL 22–14–8).

[¶ 9.] Taylor was charged with possession of a controlled substance (methamphetamine) (SDCL 22–42–5).

[¶ 10.] Durke, Cook, and Taylor filed a motion to suppress the evidence seized. Following a hearing, the trial court granted their motion and suppressed the evidence on the basis that there was no proper showing to search these three individuals. The State appeals. We affirm.

## STANDARD OF REVIEW

[¶ 11.] Our standard of review is well-established:

A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous. *State v. Pfaff,* 456 N.W.2d 558 (S.D.1990).... This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. *State v. Corder,* 460 N.W.2d 733 (S.D.1990). In making this determination, we review the evidence in a light most favorable to the trial court's decision. *Id.*

*State v. Baysinger,* 470 N.W.2d 840, 843 (S.D.1991). A trial court's decision to suppress evidence is reviewed under an abuse of discretion standard. *State v. Gesinger,* 1997 SD 6, ¶ 8 559 N.W.2d 549, 550 (citations omitted). " 'Unless such discretion is exercised to an end or purpose not justified by, and clearly against reason and evidence, the trial court's decision should stand.' " *Id.* (citations omitted).

## [¶ 12.] WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY SUPPRESSING THE EVIDENCE.

[¶ 13.] The trial court found that the searches of Durke, Cook, and Taylor exceeded the scope of a patdown search under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). It concluded that they were unlawfully arrested and subjected to full searches of their persons and belongings. Therefore, it suppressed the evidence because it was seized in violation of their constitutional rights. We agree that they were improperly detained and that they should have been told they were free to leave. Therefore, we affirm.

[¶ 14.] The initial stop was lawful based on the radio report received by Vlasman and his observation of the motorcycles with high handlebars. *State v. Claussen,* 522 N.W.2d 196, 198 (S.D.1994). The discovery of the marijuana pipe provided probable cause for the arrest and subsequent search of Perry. However, Durke, Cook, and Taylor were detained after the purpose for the in-

vestigatory stop had ended. If they had been allowed to leave when the officers no longer had reason to detain them, they would not have been present when the troopers handcuffed and searched the remaining bikers.

[¶ 15.] The bikes that Durke, Cook, and Taylor rode did not have high handlebars. Yet they were not told that they could leave. In fact, Taylor testified:

Q: Do you recall someone, whether it be Trooper Vlasman or anyone else, saying you're free to go?

A: No. I recall he said as soon as the handle bars were all lowered that we would be free to go.

Q: Okay.

A: And I took that as everybody had to lower their handle bars or nobody was leaving.

Trooper Vlasman conceded as much on cross-examination:

Q: You never told the people that had the handle bars that were in compliance, you guys can leave if you want to, did you?

A: No, sir, I did not.

[¶ 16.] The trial court made specific findings of fact on this point in Taylor's case:

Although Trooper Vlasman told the motorcyclists that as soon as the four (4) bikes not in compliance with South Dakota law had brought them into compliance they could leave, it was not clear whether or not his statements were directed to all motorcyclists or just those four (4) who had the handle bars higher than that which is allowed by South Dakota law. Defendant Taylor believed the statements made by Trooper Vlasman to include him, and he felt that he must stay until all of the motorcyclists in the group had their motorcycles in compliance with State law before they could leave. Trooper Vlasman did testify that only those four (4) with high handle bars were being detained, and the balance of the motorcycles could have left although it was not clearly indicated to them that this was the case.

The trial court even took pains to handwrite additional findings in Durke and Cook's typed findings that "[i]t was not clear wheth-

er the others could leave, although the officer felt they could."

[¶ 17.] Durke, Cook, and Taylor remained at the roadside in obedience to the earlier command that they pull over because it was not made clear to them that they were free to leave. *United States v. Manbeck*, 744 F.2d 360, 376–77 (4th Cir.1984), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). The officers had admittedly finished their investigation with Durke, Cook, and Taylor, so any search conducted after they had been illegally detained was improper as to them. Therefore, it is unnecessary for us to consider whether the patdown searches of Durke, Cook, and Taylor were permissible under *Terry*. Because they were detained after the purpose of the investigatory stop had ended as to them, the trial court properly suppressed the illegally obtained evidence and we affirm.

[¶ 18.] MILLER, Chief Justice, and AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.