2000 SD 134

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Shanna BALLARD, Defendant and Appellant,**

No. 21322.

Supreme Court of South Dakota.

Considered on Briefs Sept. 18, 2000.

Decided Oct. 18, 2000.

838

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Matthew J. Kinney, Spearfish, for defendant and appellant.

KONENKAMP, Justice

[¶ 1.] If, after issuing a traffic warning, an officer tells a driver she is free to leave but asks for her consent to search her vehicle for drugs, and she refuses, may the officer then detain the driver to await the use of a drug dog? The defendant argues that the officer had insufficient legal grounds to continue detaining her after she was told she was free to go. The circuit court denied her motion to suppress, but we conclude that it should have been granted and reverse.

### A.

[¶ 2.] On August 14, 1999, at 11:50 p.m., Lawrence County Deputy Sheriff Michael Shafer observed a car driving partly on the shoulder of the road near Whitewood, South Dakota. Shafer followed for a short distance and saw the car cross the center-line. He then stopped the driver for a violation of SDCL 32–26–1.[1] Shafer suspected the driver was intoxicated.

[¶ 3.] Deputy Shafer approached the vehicle, advised the driver, Shanna Ballard, of his reason for stopping her, and asked for her driver's license. Ballard explained that she was driving erratically because she had been looking for something in her purse. Shafer did not smell alcohol or detect the presence of any contraband in the car. He asked Ballard to come back to his patrol vehicle. Her two passengers remained in her car.

[¶ 4.] While in the patrol car, Shafer observed Ballard to be "very fidgety"—her hands were shaking; she could not sit still; her pupils were constricted; and she had a "wired" look. When asked at the suppression hearing to describe this "wired look," Shafer said,

> The best description that I can give would be of—very intense look. Eyes kind of very—almost bulging in focus. Almost if—if you've ever seen a picture of Charles Manson where he's just very intense, some of the photos you've seen of him, that's the best description I can give you of it.

Shafer noted that while most drivers are nervous when they encounter law enforcement officers, Ballard's conduct was "remarkable" and "unique from other people." In his experience this behavior was consistent with methamphetamine use. Nonetheless, after checking the status of her license and issuing her a warning citation, Shafer told Ballard she was "free to leave." Then he told her that he was suspicious about the presence of drugs in her car and asked her for consent to search it. Ballard refused.

[¶ 5.] Shafer informed Ballard that he was going to detain her vehicle until a drug detection dog could be brought to the scene. He radioed for a K–9 unit. In his suppression hearing testimony, Shafer admitted he had no probable cause to search at this point, but he believed he had reasonable suspicion that there was contraband in Ballard's vehicle. Shafer left Ballard in his patrol car and told the two passengers that the vehicle would be detained until a drug dog could be brought to the scene. He went on to ask the occupants if any items in the car belonged to them. He also asked if the dog would "alert" to any contraband. One passenger admitted that he had a "bowl of marijuana" in his bag. Shafer asked both passengers to step outside the vehicle.

[¶ 6.] About five minutes later, Trooper Schnettler arrived along with his dog, Nitro. Schnettler led Nitro around the vehicle to sniff for illicit substances. When Nitro "alerted" to a part of the car, the entire vehicle was searched. The officers found a blue zipper bag that contained a scale with white powder residue, a plastic bag containing marijuana, a box containing three plastic bindles with white powder residue, and various syringes. All three occupants were arrested.

[¶ 7.] Ballard was indicted on one count of possession of a controlled substance and one count of possession of marijuana. A charge of possession of drug paraphernalia was later added. She moved to suppress and, following a hearing, the circuit court denied her motion. In a bench trial, Ballard was found guilty on all charges and given a suspended imposition of sentence with probationary conditions. Her suspended imposition of sentence was later revoked and the court suspended the execution of a prison sentence, allowing Ballard to continue probation in her home state of Colorado.

---

1. SDCL 32–26–1 provides: "the driver of a vehicle shall drive the same upon the right half of the highway ... except when overtaking and passing another vehicle...."

[¶ 8.] Ballard now appeals challenging the legality of her continued detention after the warning citation was issued and she was told that she was "free to leave." She asserts that this constituted a second stop without reasonable suspicion or probable cause.[2] Ballard also argues that even if Shafer's continued detention was permissible there was no reasonable suspicion for the canine sniff, or that this particular canine sniff was unreasonable and should be classified as a "search."[3] We need not reach these alternative arguments.

### B.

[¶ 9.] We recently clarified the appropriate standard for reviewing decisions on warrantless searches and seizures. *State v. Hirning*, 1999 SD 53, ¶ 9, 592 N.W.2d 600, 603. "[A]s a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal." *Id.* (italics and alterations in original)(citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). In reviewing findings of fact we continue to apply the clearly erroneous standard. *Hirning*, 1999 SD 53, ¶ 8, 592 N.W.2d at 603 (citing *State v. Almond*, 511 N.W.2d 572, 573–74 (S.D.1994)). A finding is clearly erroneous only if, after reviewing the evidence in its entirety, "we are left with a definite and firm conviction that a mistake was made." *Almond*, 511 N.W.2d at 574. "Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo." *Hirning*, 1999 SD 53, ¶ 8, 592 N.W.2d at 603 (citations omitted).

### C.

[¶ 10.] The Fourth Amendment to the United States Constitution and Article VI § 11 of the South Dakota Constitution protect the "right of the people to be secure in their persons, houses and effects, against unreasonable searches and seizures...." As a rule, this protection has been interpreted as holding "a seizure of personal property ... per se unreasonable ... unless it is accomplished pursuant to a judicial warrant issued upon probable cause...." *United States v. Place*, 462 U.S. 696, 701, 103 S.Ct. 2637, 2641, 77 L.Ed.2d 110 (1983). In *Terry v. Ohio*, however, the United States Supreme Court recognized "the narrow authority of police officers who suspect criminal activity to make limited intrusions on an individual's personal security based on less than probable cause." *Id.* at 702, 103 S.Ct. at 2642, 77 L.Ed.2d at 117. Whether a particular intrusion will fall into the *Terry* exception will be decided by balancing the "quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Place*, 462 U.S. at 703, 103 S.Ct. at 2642, 77 L.Ed.2d at 118 (citing *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968)).

[¶ 11.] Police officers must have "specific and articulable suspicion of a violation" before a traffic stop is permissible. *State v. Vento*, 1999 SD 158, ¶ 8, 604 N.W.2d 468, 470 (citing *State v. Cuny*, 534 N.W.2d 52, 53 (S.D.1995)). Ballard's conduct in crossing over the centerline and fog line provided reasonable suspicion to justify the initial stop. *See Spenner v. City of Sioux Falls*, 1998 SD 56, ¶ 14, 580

**2.** The State appears to invoke the automobile exception to the warrant requirement. This exception only excuses the absence of a warrant not the absence of probable cause. Wayne R. LaFave, Search and Seizure § 7.1(a) at 433 (3d ed. 1995). Shafer had no probable cause when he decided to detain Ballard's vehicle. Thus, the automobile exception cannot be used to validate the continued detention of Ballard's vehicle after issuance of the warning citation.

**3.** In *United States v. Place*, 462 U.S. 696, 707 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110 (1983), the Supreme Court concluded that exposing an individual's luggage, which was located in a public place, to a canine trained to search for contraband did not constitute a "search" under the Fourth Amendment.

N.W.2d 606, 610–11. Shafer was entitled to conduct an investigation "reasonably related in scope to the circumstances that justified the interference in the first place." *United States v. Bloomfield,* 40 F.3d 910, 915 (8thCir.1994); *Vento,* 1999 SD 158, ¶ 15, 604 N.W.2d 468, 471. A reasonable investigation includes "a request for driver's license, vehicle registration, and proof of insurance." *Id. See also Bloomfield,* 40 F.3d at 915 (having a driver accompany officer to patrol car is a reasonable request). A traffic investigation may also include a computer check on automobile registration and outstanding warrants. *State v. Anderson,* 258 Neb. 627, 605 N.W.2d 124, 131 (2000) (citations omitted). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325–26, 75 L.Ed.2d 229, 238 (1983) (citations omitted).

[¶ 12.] Generally, once a traffic investigation is completed an officer must allow the driver to proceed without further constraint. *State v. Woolfolk,* 3 S.W.3d 823, 828 (Mo.Ct.App.1999). To detain a driver further an officer must have "a reasonable, articulable suspicion that [the] person is involved in criminal activity unrelated to the traffic violation." *Anderson,* 605 N.W.2d at 132 (citing *United States v. Carrate,* 122 F.3d 666, 668 (8th Cir.1997)); *Woolfolk,* 3 S.W.3d at 828–29 (Mo.Ct.App. 1999).

[¶ 13.] Like reasonable suspicion for the initial stop, reasonable suspicion to justify extending the scope of a traffic stop is examined under an objective test. The facts asserted to justify suspicion are measured "as a totality and in light of the officer's experience." *Bloomfield,* 40 F.3d at 918 (citations omitted). Looking at all the circumstances, we must ask whether Shafer had a suspicion of an offense apart from the initial traffic violation and if that suspicion was objectively reasonable. *See Anderson,* 605 N.W.2d at 132; *Vento,* 1999 SD 158, ¶ 8, 604 N.W.2d at 470. In deciding whether particular facts give rise to an objectively reasonable suspicion the officer must have more than "an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Anderson,* 605 N.W.2d at 132. We require "a specific and articulable suspicion of a violation. . . ." *Spenner,* 1998 SD 56, ¶ 14, 580 N.W.2d at 610 (citing *State v. Cuny,* 534 N.W.2d 52, 53 (S.D.1995)).

[¶ 14.] After stopping Ballard's car, Shafer asked her to sit in the patrol car. While he issued the citation and called in for a check on her driver's license, he noticed that Ballard was "fidgety," she looked "wired," her pupils were constricted, and she was remarkably more nervous than most persons during a traffic stop. This nervous behavior did not subside when Shafer told Ballard that he would only issue a warning. These facts caused Shafer to become suspicious that Ballard was under the influence of some drug. Shafer nonetheless told Ballard she was free to leave. As he testified, "She was free to go, but I was asking for consent to search her car." His investigation was not over, he explained, but he "needed to make sure she was aware she was free to leave prior to" asking for her consent.

[¶ 15.] We conclude that Shafer's detention of Ballard after telling her she was free to leave was impermissible under the Fourth Amendment. All the observations he made about her occurred before he told her she was free to go and no new suspicious information arose before he decided to detain her further. In its findings of fact, the circuit court specifically noted Shafer's description of Ballard as "wired" and in Shafer's experience this look was consistent with use of methamphetamine. However, Shafer made that observation while Ballard was in the patrol car and before he told her she was free to leave.

[¶ 16.] In *State v. Durke,* law enforcement officers conducted a valid traffic stop of a group of seven motorcyclists. *Durke,* 1999 SD 39, ¶ 3, 593 N.W.2d 407, 408. Four of the motorcycles had handlebars that were too high under South Dakota law. *Id.* at ¶ 2, 593 N.W.2d at 408. After accomplishing the stop, the officers checked the drivers' licenses and registrations of the seven, finding no problems. *Id.* at ¶ 3, 593 N.W.2d at 408. The three motorcyclists whose handlebars complied with the law wished to leave; however, the officers did not explain that they were free to go. *Id.* One of the officers later noticed a marijuana pipe and a pistol. After this discovery all the individuals were handcuffed and their belongings searched. *Id.* at ¶¶ 4–5, 593 N.W.2d at 408–09. We concluded that continued detention of the cyclists who were in compliance with the handlebar law was illegal. *Id.* at ¶ 17, 593 N.W.2d at 410. The cyclists were detained after the initial traffic stop when no additional facts suggesting a violation were observed. The distinction here, of course, is that Deputy Shafer had other suspicions, but he nonetheless told Ballard she was free to leave, a questionable maneuver to employ in the midst of a claimed ongoing investigation.

[¶ 17.] Once officers tell traffic violators they are free to leave with a citation or a warning, the Fourth Amendment intercedes to limit a further detention or search. *United States v. $404,905 in U.S. Currency,* 182 F.3d 643, 648 (8th Cir.1999). A refusal to give consent to search after the motorist is free to leave cannot give rise, of itself, to further suspicion and justification for a search; otherwise, the exercise of a Fourth Amendment right would be meaningless. This case presents a close question on when continued detention becomes unreasonable. However, we are concerned with the dubious message we send to law enforcement officers and the public if we validate a procedure allowing officers to falsely tell traffic offenders they are free to go, only for the purpose of eliciting their uncoerced agreement to search their automobiles.

[¶ 18.] We reverse the circuit court's order denying Ballard's motion to suppress.

[¶ 19.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.