GORS, Acting Justice.
[¶ 1.] The State of South Dakota (State) appeals the trial court’s order suppressing evidence obtained during a state trooper’s traffic stop of a commercial vehicle. The trial court held that the random stop of the truck was unconstitutional. We reverse and remand.
FACTS AND PROCEDURE
[¶ 2.] State Trooper Brian Swets (Swets) is a certified drug dog handler for the South Dakota Highway Patrol. Swets’ primary duty with the Highway Patrol is drug interdiction. On December 26, 2000, however, Swets focused his attention on commercial vehicles. Around 3:00 p.m., Scott Rechtenbach (Rechtenbach) was operating his semi-tractor pulling a trailer on Highway 34 near St. Onge, South Dakota. Swets pulled Rechtenbach over to check his logbook and paperwork. This was a random stop. Swets did not observe any driving violations prior to stopping Re-chtenbach, and he had no other reasons to stop him.
[¶ 3.] After Rechtenbach pulled over, Swets asked to see his logbook, registration and driver’s license. Rechtenbach produced these items and told Swets that his logbook was not current. Swets ordered Rechtenbach to step out of his truck and to get into the patrol car so Swets could look over the logbook and paperwork. As Rechtenbach stepped out of the truck, Swets noticed a leather pouch attached to his belt. For safety purposes, Swets conducted a “pat down” search. The leather pouch contained a knife, and a second knife was found in Rechtenbach’s pants’ pocket. Swets also found a piece of hard wire in Rechtenbach’s shirt pocket that had white residue on the end of the wire. Swets recognized this item as a tool commonly used as a pipe-cleaning device for illegal drugs.
[¶ 4.] Swets ordered Rechtenbach to step into the patrol car. Swets testified that Rechtenbach fidgeted and exhibited “continual movement and unrest.” Therefore, Swets checked Rechtenbach’s eyes and conducted a field sobriety test. Re- *292 chtenbach’s performance was consistent with stimulant usage. Swets then walked the drug dog around Rechtenbach’s vehicle. The dog “alerted” to the bottom of the driver’s side door seam. Swets searched the truck and found two glass pipes, a pill and a bottle containing alcohol.
[¶ 5.] Rechtenbach was indicted for driving under the combined influence of alcohol or drugs and for two counts of possession of a controlled substance. On February 1, 2001, Rechtenbach moved to suppress the evidence, alleging that it was seized in violation of the Fourth and Fourteenth Amendments of the United States Constitution and Section 11 of Article VI of the South Dakota Constitution.[1] The trial court granted the motion to suppress on March 6, 2001.
STANDARD OF REVIEW
[¶ 6.] We have recently clarified the standard of review for a trial court’s motion to suppress:
A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo. We review findings of fact under the clearly erroneous standard. Once the facts have been determined, however, the application of a legal standard to those facts is a question of law de novo.
State v. Hodges, 2001 SD 93,¶ 8, 631 N.W.2d 206, 209 (internal citations omitted). Since the facts are not in dispute, this appeal is subject to de novo review.
ANALYSIS
[¶ 7.] The trial court reached its decision to suppress based on the initial stop of Rechtenbach. The trial court applied the test from New York v. Burger, 482 U.S. 691, 702-3, 107 S.Ct. 2636, 2644, 96 L.Ed.2d 601, 614 (1987). The Burger test determines the constitutionality of warrantless inspections of “closely regulated” industries. The three prongs of the test are as follows:
First, there must be a “substantial” government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the war-rantless inspections must be “necessary to further [the] regulatory scheme.” ... Finally, “the statute’s inspection program, in terms of the certainty and regularity of its application, [must] pro-vid[e] a constitutionally adequate substitute for a warrant.” In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to law and has a properly defined scope, and it must limit the discretion of the inspecting officers.
Id. at 702-3, 107 S.Ct. 2636, 96 L.Ed.2d 601 (internal citations omitted).
[¶ 8.] The trial court held that the first and second prongs of the Burger test were satisfied, but not the third prong because there was no definitive statutory scheme that performed the functions of a warrant. The trial court noted that there was no limitation to the time, place and scope of the investigative stop conducted by Swets. Accordingly, the issue on appeal is whether the regulatory scheme provides an adequate substitute for a warrant.
[¶ 9.] SDCL 49-28-66 provides, in pertinent part, that “any law enforcement officer may require the driver of a commercial vehicle to stop a vehicle at any time for inspection to determine whether the provi *293 sions of this chapter are being complied with.” (emphasis added). SDCL 32-2-7 provides:
Agents, patrol officers, motor carrier enforcement officers, and motor carrier inspectors of the Department of Commerce and Regulation shall assist in the enforcement of all laws, police regulations, and rules governing motor vehicles and motor carriers over and upon the highways of this state. The agents, patrol officers, motor carrier enforcement officers, and motor carrier inspectors may stop any vehicle or carrier to examine, measure, or weigh the vehicle ... The agents, patrol officers, motor carrier enforcement officers, and motor carrier inspectors may examine any bill-of-lading, registration, license, or permit to determine if the motor carrier is properly registered, licensed, or permitted ....
(emphasis added).
[¶ 10.] The trial court concluded that “SDCL 32-2-7 would seem to limit the .scope of what may be inspected, however there does not seem to be any limits on the time and place of said search.” The court further stated SDCL 49-28-66 and 32-2-7 fail to provide the necessary guidelines for an officer to determine which vehicle to stop. The trial court relied on Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) and concluded, “[i]n the case at hand there are certainly alternative and less intrusive means of making sure a commercial driver’s paperwork is in order. Since SDCL 49-28 does not provide a constitutionally adequate substitute for a warrant, I must suppress all evidence discovered after the illegal stop.”
[¶ 11.] In Prouse the United States Supreme Court upheld a trial court’s suppression of evidence seized during a “routine” stop of an individual in a non-commercial automobile to check his driver’s license and registration. The Supreme Court held that the stop and detention were unreasonable under the Fourth Amendment. 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673-74. However, in Prouse the defendant was not operating a commercial vehicle; he was driving his own automobile. Prouse stands for the proposition that a stop of a private individual in a non-commercial automobile must be based on articulable and reasonable suspicion. Id.
[¶ 12.] This case is different from Prouse. Non-commercial automobile drivers only need a driver’s license, insurance and registration. They operate vehicles which weigh one or two tons, carry limited numbers of passengers and limited cargo. By contrast, truck drivers operate large, long vehicles which may weigh many tons and haul huge loads. The big rigs impair the condition of the road if they are overweight and the safety of other traffic if not properly equipped and properly driven. To ensure public safety and to prevent highway damage, the trucking industry is “closely regulated” by both state and federal governments.
[¶ 13.] To effectively regulate the trucking industry, state troopers need to make random stops. Ports of entry, inspection stations and roadblocks have only limited effectiveness. Citizen’s band (CB) radios, cell phones and other modern technology allow truckers to communicate enforcement locations and to either remedy violations or avoid inspection sites. See State v. Crum, 270 Kan. 870, 19 P.3d 172, 177-78 (2001) (citing State v. Williams, 8 Kan.App.2d 14, 648 P.2d 1156, 1161 (1982)).
[¶ 14.] Truck drivers know they may be stopped for inspections at any time. Not only is this the practice nationwide, but South Dakota state law clearly states that a commercial vehicle may be stopped at “any time.” SDCL 49-28-66. SDCL *294 32-2-7 limits the stop to “examine any bill-of-lading, registration, license, or permit to determine if the motor carrier is properly registered, licensed, or permitted and if the load transported is an amount permitted....”
[¶ 15.] The trial court agreed that the scope of the search is limited but believed there were no limitations as to time and place. However, SDCL 32-2-7 applies only to motor carriers “upon the highways of this state.” Troopers cannot go into garages or warehouses or otherwise make off-road inspections under this statute. Therefore, the place of inspection is sufficiently limited.
[¶ 16.] Although it almost begs the question to say that “any time a truck is on the road” is a limitation, “any time” is limited, to only those times when trucks are on the road. Troopers cannot inspect trucks at times when they are not on the road. Commercial trucks operate twenty-four hours per day, seven days per week. The State has little control over when trucks will be on the highway or what routes the drivers will take. If stops cannot be made at “any time” truck drivers would be free to violate the law and regulations with impunity. Therefore, the time of the inspection is also sufficiently limited.
[¶ 17.] This Court previously applied Burger to the trucking industry in 'South Dakota in two prior cases. In Ritter v. Johnson, 465 N.W.2d 196 (S.D.1991) an employee of the Motor Carrier Division of the South Dakota Highway Patrol ordered the driver of a truck who was hauling rock to turn around and proceed to a portable weigh station. In considering the driver’s § 1983 claim, this Court stated,
such a seizure is clearly not an unreasonable seizure in view of the “closely regulated” nature of the trucking industry. The state has a “substantial interest? in enforcing its truck inspection regulatory scheme; warrantless inspections are “necessary to further the regulatory scheme”; and there is sufficient “certainty and regularity” in the application of the regularity scheme to provide a “constitutionally adequate substitute for a warrant.”
Id. at 199-200 (quoting Burger, 482 U.S. at 702-3, 107 S.Ct. at 2643-44, 96 L.Ed.2d at 614).
[¶ 18.] This Court also considered a regulatory stop in State v. Barton, 2001 SD 52, 625 N.W.2d 275.[2] In Barton the defendant was stopped while driving a tractor that was pulling a large grain cart. The defendant was pulled over to determine whether the vehicle was overweight. While this Court found that reasonable suspicion existed for the stop under the facts of the case, the Court also noted that reasonable suspicion was not necessary for a stop given the “closely regulated” nature of the trucking industry. Id. at ¶ 12, 625 N.W.2d at 278-79.
[¶ 19.] Rechtenbach was stopped to effectuate an inspection of the “closely regulated” trucking industry. Articulable and reasonable suspicion is not necessary for administrative stops and searches of “closely regulated” industries. The fact that evidence of criminal activity was uncovered as a result of the stop does not render the stop or the seizure of the evidence unconstitutional. As the Burger Court noted, “[n]or do we think that this administrative scheme is unconstitutional simply because ... an inspecting officer may discover evidence of crimes, besides violations of the scheme itself.... The discovery of evidence of crimes in the course of an otherwise proper administrative inspection does not render that search illegal or the administrative scheme suspect.” Burger, 482 U.S. at 716, 107 S.Ct. at 2651, 96 L.Ed.2d at 622-23.
*295 [¶ 20.] We disagree with the trial court and conclude that South Dakota statutes provide adequate limits on what is to be inspected, and on when and where the inspection is to take place. In this case, the stop, search and seizure complied with SDCL 49-28-66, 32-2-7 and the three-pronged test articulated in Burger. Therefore the stop, search and seizure of the evidence was constitutional. The trial court’s order of suppression is reversed, and this case is remanded for further proceedings consistent with this opinion.
[¶ 21.] GILBERTSON, Chief Justice, and KONENKAMP, Justice, concur.
[¶ 22.] SABERS and AMUNDSON, Justices, dissent.

. The Fourth and Fourteenth Amendments to the United States Constitution, and Section 11 of Article VI of the South Dakota Constitution, protect individuals against unreasonable searches and seizures.

. Barton was decided after the trial court's decision in this case.