2003 SD 18

**STATE of South Dakota, Plaintiff and Appellant,**

v.

**Edward DE LA ROSA, Defendant and Appellee.**

**State of South Dakota, Plaintiff and Appellant,**

v.

**Lane Stocker, Defendant and Appellee.**

**Nos. 22231, 22232.**

Supreme Court of South Dakota.

Argued Oct. 9, 2002.

Reassigned Dec. 16, 2002.

Decided Feb. 12, 2003.

Sabers, J., dissented and filed opinion in which Amundson, Retired Justice, joined.

Amundson, Retired Justice, filed dissenting opinion.

Lawrence E. Long, Attorney General, Patricia Archer, Assistant Attorney General, Pierre, South Dakota, Attorneys for appellant.

Candi L. Thomson of Morman Law Firm, Sturgis, South Dakota, Attorney for appellee De La Rosa.

Robert A. Haivala, Sturgis, South Dakota, Attorney for appellee Stocker.

GILBERTSON, Chief Justice (on reassignment).

[¶ 1.] Edward De La Rosa and Lane Stocker were arrested and charged with Possession of a Controlled Substance (SDCL 22–42–5) and Possession of Two Ounces or Less of Marijuana (SDCL 22–42–6). Both Defendants filed Motions to Suppress the drug evidence seized during a traffic stop on August 7, 2001. After an evidentiary hearing, the trial court entered its decision granting the motions to suppress. The State appeals claiming no constitutional violation occurs when a motorist is briefly detained for a few seconds beyond the conclusion of a traffic stop for a canine sniff of the vehicle's exterior. We agree and reverse the trial court.

## FACTS

[¶ 2.] During the Sturgis Motorcycle Rally, on August 7, 2001, De La Rosa was pulled over in Sturgis, South Dakota for failure to use his left turn signal. De La Rosa identified himself as being from Denver, Colorado. The arresting officer, Steve Marquardt, was an 18–year veteran of the South Dakota Highway Patrol on

duty with his drug detection canine named Tess. After confirming that De La Rosa's turn signal was in working order, Trooper Marquardt requested that De La Rosa accompany him to his patrol car. The trooper performed a radio check for warrants and a license check, which checks eventually came back clear, and he issued a warning citation for the signal violation.

[¶ 3.] Trooper Marquardt testified that once he returned De La Rosa's documents and issued the warning citation, the traffic stop was completed but that he did not inform De La Rosa that he was free to go. Rather, he had De La Rosa stand in front of the patrol car while he used Tess to perform a sniff test on De La Rosa's truck. Before beginning the sniff test, Officer Marquardt approached the passenger side of the truck and requested that the passenger, Defendant Lane Stocker, exit the vehicle. She did so, and Tess began her work. Tess indicated that there were drugs in the passenger compartment of the truck. A search of Stocker's purse revealed marijuana. A further search of Stocker's travel bag in the back of the pickup revealed some peyote and more marijuana. Both Stocker and De La Rosa were arrested.

[¶ 4.] The State has conceded that at the time the sniff test was performed, De La Rosa's traffic stop was completed and that Trooper Marquardt had no particularized suspicion that illegal drugs were in the vehicle. Thus, the sole question on appeal is whether there is a violation of the Fourth Amendment of the United States Constitution and Article IV § 11 of the South Dakota Constitution (collectively Fourth Amendment) when a motorist's detention at a valid traffic stop is briefly extended for a canine sniff of the vehicle's exterior, when the officer has a drug canine at his immediate disposal. Based on a totality of the circumstances, we hold

that the facts of this case result in no constitutional violation. We reverse the circuit court's grant of the Defendants' motions to suppress the evidence seized.

## STANDARD OF REVIEW

[¶ 5.] In reviewing a motion to suppress based on an alleged violation of a constitutional right, we utilize the de novo standard. *State v. Rechtenbach,* 2002 SD 96, ¶ 6, 650 N.W.2d 290, 292 (citing *State v. Hodges,* 2001 SD 93, ¶ 8, 631 N.W.2d 206, 209). Findings of fact are reviewed under the clearly erroneous standard. *Hodges,* 2001 SD 93, ¶ 8, 631 N.W.2d at 209. "Once the facts have been determined, however, the application of a legal standard to those facts is a question of law reviewed de novo." *State v. Hirning,* 1999 SD 53, ¶ 8, 592 N.W.2d 600, 603 (citing *Spenner v. City of Sioux Falls,* 1998 SD 56, ¶ 13, 580 N.W.2d 606, 610). The facts in this case are not disputed so our review is de novo.

[¶ 6.] **DOES A CONSTITUTIONAL FOURTH AMENDMENT VIOLATION OCCUR WHEN A MOTORIST'S DETENTION AT A VALID TRAFFIC STOP IS BRIEFLY EXTENDED FOR A CANINE SNIFF OF THE VEHICLE'S EXTERIOR, WHERE THE OFFICER HAS THE DRUG CANINE AT HIS IMMEDIATE DISPOSAL.**

[¶ 7.] The Fourth Amendment protects citizens from unreasonable searches and seizures by government officials. US Const. amend. IV. Police officers are generally required to have a warrant issued by a judicial officer based on probable cause in order to seize an individual of his or her property. *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889, 905 (1968) (additional citations omitted). However, in *Terry,* 392 U.S. at 23, 88 S.Ct. at 1881, 20 L.Ed.2d at

906–7, the United States Supreme Court has recognized the need to allow police officers to safely and effectively perform their functions. The *Terry* line of cases establishes that when a person is subject to an "investigative detention" rather than a full-blown custodial arrest, the officer need only have reasonable suspicion for the detention rather than the probable cause typically required. *Id.* at 30, 88 S.Ct. at 1884–85. An investigatory stop satisfies the Fourth Amendment if the officer's action is supported by reasonable suspicion to believe that criminal activity "may be afoot." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911.[1]

[¶ 8.] There is no dispute that Trooper Marquardt was within constitutional bounds when he initially stopped De La Rosa. *State v. Vento*, 1999 SD 158, ¶ 8, 604 N.W.2d 468, 470 (citing *State v. Cuny*, 534 N.W.2d 52, 53 (S.D.1995)) (holding that an officer must have "specific and articulable suspicion of a violation" for a traffic stop to be permissible). The State concedes, however, that at the time the sniff test was conducted on the exterior of De La Rosa's vehicle, the initial traffic stop was complete, and Trooper Marquardt had no particularized suspicion there were illegal drugs in the Defendant's vehicle.

[¶ 9.] The Fourth Amendment to the constitution only prohibits unreasonable "search and seizures." When this "constitutional standard" of reasonableness is measured by the totality of the circumstances, "we should not be governed by artificial distinctions." *Currency*, 182 F.3d at 649. The touchstone of Fourth Amendment constitutional analysis is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108–109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331, 333 (1977) (quoting *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878, 20 L.Ed.2d at 906); *State v. Lamont*, 2001 SD 92, ¶ 38, 631 N.W.2d 603, 616. Reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Mimms*, 434 U.S. at 109, 98 S.Ct. at 332, 54 L.Ed.2d at 333 (citations omitted). The public interest in the suppression of illegal drugs and their devastating effect on our citizens is obvious.

Few problems affecting the health and welfare of our population, particularly our young, cause greater concern than the escalating use of controlled substances … [a]nd many drugs … may be easily concealed. As a result, the

---

1. A *Terry* analysis may be of limited assistance in the resolution of the Fourth Amendment issue now before us. As the Eighth Circuit Court of Appeals reasoned in *United States v. $404,905 in U.S. Currency*, 182 F.3d 643 (8thCir.1999), *Terry* stops are properly done where the officers detain persons with only reasonable suspicion that criminal activity is afoot. However, the Court concluded that a traffic stop is not investigative; it is a form of arrest based upon probable cause that a penal law has been violated, generally by a violation committed in the presence of the arresting officer. *Id.* at 648. The Court concluded:

> Applying the reasoning of *Berkemer v. McCarty*, [468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)] and *Knowles v. Iowa*,

[525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)] to the issue of unreasonable detention during a traffic stop, we believe the Supreme Court would not closely examine the time it takes a traffic officer to complete the traffic stop itself, consistent with the discretion given arresting officers in other contexts. But once the officer decides to let a routine traffic offender depart with a ticket, a warning or an all clear—a point in time determined, like other Fourth Amendment inquiries, by objective indicia of an officer's intent—then the Fourth Amendment applies to limit any subsequent detention or search.

*Id.* at 648.

obstacles to detection of illegal conduct may be unmatched in any other area of law enforcement.

*United States v. Mendenhall,* 446 U.S. 544, 561–62, 100 S.Ct. 1870, 1881, 64 L.Ed.2d 497 (1980). (Powell, J., concurring.)

[¶ 10.] There is no question the initial stop of the Defendant's vehicle was valid based upon the Trooper's eyewitness observation that a traffic violation had occurred. SDCL ch 32–26 (motor vehicle rules of the road). For purposes of analysis of the issue before us, this also satisfied the constitutional standard of reasonable suspicion for that stop. *Vento,* 1999 SD 158, ¶ 8, 604 N.W.2d at 470. From that point, the Defendants invite this Court to dissect the facts into two distinct events, those involving the normal checks of a driver's license and proof of insurance and second, the use of the drug dog to sniff around the exterior of the Defendant's vehicle. The Defendants argue the dog sniffing of the vehicle is constitutionally unreasonable based on an analysis of lack of reasonable suspicion.[2]

[¶ 11.] The lack of reasonable suspicion, however, does not automatically equate with unconstitutional conduct on the part of the officer.[3] Here, the officer had the dog at hand in his vehicle, and the Defendants concede the sniffing activity was of a short duration. Had there been no "hits," the delay to the motorists would have been a matter of seconds. We cannot accept the premise that while the State's interest in drug interdiction is compelling, a few seconds delay for non-entry sniffing the exterior of a vehicle by a dog already on the scene is constitutionally unreasonable.[4]

2. Although the objective facts before Trooper Marquardt may not rise to *Terry's* reasonable suspicion standard that illegal drugs were in the car, Marquardt's decision to have Tess sniff the Defendant's vehicle was not based solely upon whim or caprice. Marquardt testified that as a veteran Trooper and based upon his prior experience, Denver Colorado was a major source for drugs at the Sturgis Motorcycle Rally. He was also aware there was an increased amount of drug usage at the Sturgis Rally.

3. Other cases have recognized and upheld similar intrusions made in the absence of a particularized suspicion. *See Hodges,* 2001 SD 93, ¶ 17, 631 N.W.2d at 211 (officer had right to order passenger to remain in vehicle stopped for traffic violation, even though no reasonable suspicion existed as to passenger at the time); *Mimms,* 434 U.S. at 111, 98 S.Ct. at 333, 54 L.Ed.2d at 333 (1977) (officer may order driver out of vehicle during traffic stop); *United States v. Martinez–Fuerte,* 428 U.S. 543, 562, 96 S.Ct. 3074, 3085, 49 L.Ed.2d 1116 (1976) (suspicion less Border Patrol checkpoint for detecting illegal aliens was valid). As the Court in *Martinez–Fuerte* noted, while some quantum of individualized suspicion is usually a prerequisite to a constitutional search and seizure, "the Fourth Amendment imposes no irreducible require-

ment of such suspicion." 428 U.S. at 561, 96 S.Ct. at 3084. In that case, the United States Supreme Court determined the government's interest in detecting illegal aliens outweighed the motorists' privacy interests. The Court relied, in part, on the fact that "one's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence." *Id.* (citations omitted). The Court held the stopping of vehicles and questioning of their occupants was minimally intrusive and could be done in the absence of individualized suspicion. *Id.*

4. At oral argument there was a lengthy discussion between the State and Justices of this Court as to whether the State would attempt to expand today's holding into a justification for unlimited stops of motorists to search for drugs. Clearly, the stop of a motorist and lengthy detention while a drug dog is brought in from a substantial distance is not constitutionally reasonable. We limit our decision of today to the facts of this case and leave for the future whether other "what ifs" are constitutionally permissible under a totality of circumstances standard of constitutional review. Bright-line rules instead of a totality of circumstances-reasonableness standard are generally disfavored in Fourth Amendment analy-

[¶ 12.] Our analysis is guided by a two-fold test: [1] "whether the officer's action was justified at its inception" and [2] "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879, 20 L.Ed.2d at 906. Concerning the disputed second prong, it is hardly constitutionally consistent to hold that what the officer did in first checking the Defendant's papers and then doing the sniff test to be constitutionally impermissible, yet conclude in the alternative that Trooper Marquardt would have been constitutionally justified in the sniff test had he done it before the traffic stop was finished. Constitutional rights should be based upon reasonableness of the totality of the government intrusion, rather than a mere bright-line rule based solely upon a timing sequence. Either both must be constitutionally impermissible or both constitutionally permissible.

[¶ 13.] We conclude that the analysis of the Eighth Circuit Court of Appeals in *Currency*, 182 F.3d at 648, to be constitutionally persuasive. Instead of improperly attempting to separate the trooper's actions into two distinct sequences, as previously noted, the correct measure of constitutional reasonableness is totality of the circumstances. *Currency*, 182 F.3d at 646 (citing *Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996)). *See also State v. Kenyon*, 2002 SD 111, ¶ 15, 651 N.W.2d 269, 274 (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750–51, 151 L.Ed.2d 740 (2002)) (citing *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–5, 66 L.Ed.2d 621, 628–9 (1981)).

[¶ 14.] The *Currency* Court further focused on the nature of the inspection as

that of a short duration and lack of direct invasion of the citizen's vehicle and concluded:

[A] canine sniff of the exterior of personal property in a public location "is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure" that it does not constitute a "search" within the meaning of the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)

. . .

When applied to the exterior of vehicles, the canine sniff is an investigative procedure uniquely suited to this purpose—it is so uninstrusive as not to be a search, it takes very little time, and it "discloses only the presence or absence of narcotics, a contraband item." *Place*, 462 U.S. at 707, 103 S.Ct. at 2637. For these reasons, when a police officer makes a traffic stop and has at his immediate disposal the canine resources to employ this uniquely limited investigate procedure, it does not violate the Fourth Amendment to require that the offending motorist's detention be momentarily extended for a canine sniff of the vehicle's exterior.

*Id.* at 647–49. Moreover, the Eighth Circuit has continued to follow this constitutional analysis and rationale. *United States v. Linkous*, 285 F.3d 716, 721 (8thCir.2002); *United States v. Gregory*, 302 F.3d 805, 810 (8thCir.2002) ("[w]e have held that a brief drug scan at the end of a traffic stop does not require reasonable suspicion."). The basis is that "the officer did not need to have probable cause or even reasonable suspicion to support this scan because 'a dog sniff of the exterior of

sis. *Lamont*, 2001 SD 92, ¶ 40, 631 N.W.2d    at 617 (citations omitted).

a vehicle is not a search.'" *Gregory*, 302 F.3d at 810 (citations omitted).

[¶ 15.] Today's opinion is consistent with our recent analysis in *State v. Ballard*, 2000 SD 134, 617 N.W.2d 837. As we specifically acknowledged in *Ballard*, "[w]hether a particular intrusion will fall into the *Terry* exception will be decided by balancing the 'quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Ballard*, 2000 SD 134, ¶ 10, 617 N.W.2d at 840 (citing *Place*, 462 U.S. at 703, 103 S.Ct. at 2642, 77 L.Ed.2d at 118; *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905).

[¶ 16.] Unlike *Ballard*, however, the officer in this case did not complete the traffic stop *and* then objectively foreclose any further investigation by telling the motorists that they were free to leave. In *Ballard* we concluded:

> This case presents a close question on when continued detention becomes unreasonable. However, we are concerned with the dubious message we send to law enforcement officers and the public if we validate a procedure allowing officers to falsely tell traffic offenders they are free to go, only for the purpose of eliciting their uncoerced agreement to search their automobiles.

2000 SD 134, ¶ 17, 617 N.W.2d at 842. Because our holding in *Ballard* was expressly limited to facts involving a detention which followed the *completion* of a traffic stop by the officer's announcement to the motorists that he or she was free to leave, *Ballard* does not apply to a traffic stop like the one now before us.

[¶ 17.] The artificial bright-line test result advocated by the Defendants does not comport with constitutional principles of reasonableness based upon a totality of the circumstances. Instead, it would result in constitutional rights based upon an officer's checklist or a mad dash by one officer and dog to the stopped vehicle while the other officer checks out the driver's papers. Defendants, or any driver for that fact, would be no more inconvenienced or delayed by a dog sniff in this case than would they be by a roadblock check point for detecting illegal aliens (*Martinez–Fuerte*, 428 U.S. at 543, 96 S.Ct. at 3076, 49 L.Ed.2d at 1116), roadblock-type stops to verify driver's licenses and vehicle registrations, (*Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979)) or a roadblock-type checkpoint for game during a hunting season (*State v. Halverson*, 277 N.W.2d 723, 725 (S.D. 1979)).

[¶ 18.] For the above reasons, we reverse the circuit court and remand for further proceedings consistent with this opinion.

[¶ 19.] KONENKAMP, and ZINTER, Justices, concur.

[¶ 20.] SABERS, Justice, and AMUNDSON, Retired Justice, dissent.

[¶ 21.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (dissenting).

[¶ 22.] I dissent because Trooper Marquardt's subsequent search of De La Rosa's vehicle without reasonable suspicion violated the Fourth Amendment.

[¶ 23.] Once a traffic stop is complete, the police officer must allow the driver to proceed without further constraint. *State v. Ballard*, 2000 SD 134, ¶ 12, 617 N.W.2d 837, 841 (citing *State v. Woolfolk*, 3 S.W.3d 823, 828 (Mo.Ct.App.1999)). In order to detain the driver any further, the officer must have a "reasonable, articulable suspi-

cion that [the] person is involved in criminal activity unrelated to the traffic violation." *Ballard,* 2000 SD 134, ¶ 12, 617 N.W.2d at 841 (quoting *State v. Anderson,* 258 Neb. 627, 605 N.W.2d 124, 132 (2000)) (citations omitted). Thus, we have held that when an officer tells the driver that he or she is free to leave, the "Fourth Amendment intercedes to limit a further detention or search." *Ballard,* 2000 SD 134, ¶ 17, 617 N.W.2d at 842 (citing *United States v. $404,905 in U.S. Currency,* 182 F.3d 643, 648 (8thCir.1999)).

[¶ 24.] By accepting the assertion that an officer does not need reasonable suspicion to detain a citizen after a traffic stop, the majority not only disregards constitutional principles inherent in the stop analysis, but unreasonably limits our decision in *Ballard* to encompass only those cases in which an officer actually tells the person they are free to leave. Such a limitation on *Ballard* eviscerates the protection it provides for motorists. It would mean that an officer would only need to refrain from saying the words to extend the stop unreasonably. Trooper Marquardt testified that his purpose for the initial stop was served, therefore, whether he actually said the words, "this stop is finished," the stop was over for constitutional purposes before he chose to re-seize the Defendants for a canine drug sniff. As in *Ballard,* the Court should be sensitive to the "dubious message we send to law enforcement officers and the public," 2002 SD 134 ¶ 18, 617 N.W.2d at 842, by saying that an officer need only withhold the fact that the citizen is free to end the encounter in order to justify a continued intrusion without independent justification. We should follow the well-established rule that the officer must have reasonable suspicion to detain a driver for any period longer than it takes to pursue a reasonable investigation based on the grounds for the initial stop.[5] *See e.g., State v. Kenyon,* 2002 SD 111, 651 N.W.2d 269; *State v. Durke,* 1999 SD 39, ¶ 17, 593 N.W.2d 407, 410; *State v. Ramirez,* 535 N.W.2d 847, 849 (S.D.1995) (citing *State v. Watson,* 165 Conn. 577, 345 A.2d 532, 537 (1973)).

[¶ 25.] The majority narrows the parameters of Fourth Amendment protections and disregards the rule of *Terry* by adopting the holding of the Eighth Circuit Court of Appeals in *United States v. $404,905 in U.S. Currency,* 182 F.3d 643 (8thCir.1999). In *Currency,* a police officer stopped a truck and U Haul trailer for speeding. *Id.* at 645. After the purposes of the underlying stop were accomplished, but before the officer returned the driver's documents, the officer told the driver that there would be a sniff of the truck and trailer for drugs. *Id.* at 646. The Eighth Circuit held that when a police officer makes a traffic stop and has a canine unit at his or her immediate disposal, it does not violate the Fourth Amendment to detain the motorist after the initial stop is completed for a canine sniff of the vehicle's exterior, whether or not the officer has reasonable suspicion to support the extended detention. *Id.* at 649.

[¶ 26.] The court in *Currency* relied largely on the fact that the amount of time taken to perform a sniff test was minimal and that the level of intrusion on the individual was likewise de minimis. *Id.* The problem with this reasoning is that it detracts from the real question in Fourth Amendment analysis and instead concentrates primarily on the amount of time

---

5. That reasonable investigation includes making a request for driver's license, registration, and proof of insurance. An officer may also have the driver accompany him or her to the patrol car and make a computer check on automobile registration and outstanding warrants. *United States v. Bloomfield,* 40 F.3d 910, 915 (8thCir.1994).

necessary to conduct a sniff test. However, the *threshold* question, before we address the amount of time necessary to effectuate the second stop, is whether the officer had an appropriate basis upon which to detain the citizen at that time. *See e.g., Terry,* 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906 (stating, "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence") (additional citations omitted); *Kenyon,* 2002 SD 111, ¶ 20, 651 N.W.2d at 275 (stating, "[t]he investigating officer is not constrained by the time it would have taken to issue the warnings *if, in the interim, articulable facts lead him to a reasonable suspicion that other criminal activity is afoot* ") (emphasis supplied). In any situation falling within the Fourth Amendment, the officer is required to at least have reasonable suspicion to detain a citizen. Lacking such suspicion, the detention infringes on the individual's right to be free from seizure of his or her person. When a traffic stop is completed, the officer's remaining duty is to release the individual from detention. When he fails to release the defendant, he creates a new stop for which he is required to have reasonable suspicion, regardless of whether the intrusion was minimal or egregious, or lengthy or short. Any other rule is unconstitutional.

[¶ 27.] The State's request that this Court look primarily to the length and intrusiveness of the stop is not supported by the reasoning underlying the requirements of the Fourth Amendment. The proper inquiry is two-fold. First, the Court is to determine "whether the officer's action was justified at its inception" and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905. The analysis requires that the officer have a "specific and articulable" suspicion *before* a stop is permissible. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The intrusion must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229, 238 (1983). Furthermore, the methods used must be the least intrusive means available to the officer to either verify or dispel his or her reasonable suspicion. *Id.* These constitutional principles shatter the foundation of the State's arguments.

[¶ 28.] Because Trooper Marquardt would have been constitutionally justified in the sniff test had he done it before the traffic stop was finished, the majority reasons that the requirement that an officer have reasonable suspicion to continue the detention after the stop is completed is an artificial distinction. The majority errs in its analysis. The primary inquiry in the stop analysis is whether the officer was independently justified in the second intrusion, not whether the officer told the citizen that he or she was free to go. Simply put, the majority's holding is that this Court should disregard *Terry* analysis whenever an officer chooses to detain a citizen by simply refusing to inform him or her that the initial valid stop is complete. Furthermore, accepting the holding in *Currency* leaves courts speculating on the length of time after a stop is over that an officer would be justified in detaining the motorist anew. This is a can of worms best left unopened. Trooper Marquardt's initial stop of the Defendants was both subjectively and objectively over. There is nothing in our Fourth Amendment jurisprudence which indicates that once a stop is objectively over, the officer may re-seize the individual for a different purpose without reasonable suspicion.

[¶ 29.] Fourth Amendment inquiries require the Court to look at the totality of the circumstances, but the presumption that no bright-line should be drawn lessens the constitutional protections and blurs the officer's responsibilities when detaining a citizen. The cases upon which the majority relies for the proposition that a totality of the circumstances or balancing test applies to determine whether the second stop was constitutional are premised on the threshold finding that the officer had an articulable suspicion upon which to base the stop. For example, the majority cites *United States v. Place* for the proposition that a drug sniff is minimally intrusive and therefore not a "search" for purposes of the Fourth Amendment. 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). This proposition is supported by *Place* but the level of intrusiveness of the sniff search is not the issue here, for the question revolves around whether the second detention, not the sniff search itself, was constitutionally permissible. The Court in *Place* was very pointed in its discussion of seizures, stating, "some brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure *based only on specific articulable facts* that the property contains contraband or evidence of the crime." *Place*, 462 U.S. at 706, 103 S.Ct. at 2644, 77 L.Ed.2d at 120 (emphasis supplied). Thus, even in acknowledging that the drug sniff itself was not a "search," the Court was very clear in pointing out that for the seizure itself to be constitutional, there must be reasonable suspicion. But the State argues that "when weighed against the compelling governmental interest in this case, any additional momentary delay for the canine sniff

was a de minimis intrusion on Defendants' personal liberty." Both the Eighth Circuit Court and the State misapprehend the law on stops.[6] Before any balancing takes place, it is necessary that the officer had an objective basis upon which to make the stop.

[¶ 30.] The Fourth Amendment exists to protect the innocent as well as the guilty. Although the State's interest in drug interdiction is compelling, to allow the end to justify the means violates this Court's duty to ensure that drug interdiction comports with constitutional limitations on the government's ability to intrude on a citizen. We should affirm.

AMUNDSON, Retired Justice (dissenting).

[¶ 31.] I join in Justice Sabers' dissent for the reasons set forth in my dissents in *State v. Kenyon*, 2002 SD 111, 651 N.W.2d 269; *State v. Hodges*, 2001 SD 93, 631 N.W.2d 206; and *State v. Vento*, 1999 SD 158, 604 N.W.2d 468.

---

**6.** *See e.g., United States v. Holt*, 229 F.3d 931, 935 (10thCir.2000) (rejecting the proposition of *Currency* that *Terry* analysis is not applicable in such cases and stating that the Eighth Circuit's opinion had "little support and questionable analysis").